U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

FILED

AUG 1 6 2011

CLERK, U.S. DISTRICT COURT
by_____
                    Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

GUIDEONE SPECIALTY MUTUAL       §
INSURANCE COMPANY,              §
                                §
        Plaintiff,              §
                                §
VS.                             §   NO. 4:11-CV-009-A
                                §
MISSIONARY CHURCH OF DISCIPLES  §
OF JESUS CHRIST, ET AL.,        §
                                §
        Defendants.             §

MEMORANDUM OPINION
and
ORDER
(On Summary Judgment Motion)

Before the court for decision is the motion for summary

judgment of plaintiff, GuideOne Specialty Mutual Insurance

Company.  After having considered such motion, the responses of

defendants Sonya Gilmore ("Gilmore"), Missionary Church of

Disciples of Jesus Christ ("Church"), and Amando Salgado

("Salgado") (the latter two, collectively, "Church Defendants"),

the supplemental filings of the parties,[1] the summary judgment

_____

[1]In response to an order the court signed July 12, 2011, the parties made supplemental filings on
July 26, 2011.  In plaintiff's supplemental filing it asserted grounds for granting its motion for summary
judgment that expanded on its previously asserted grounds, and in the filings by the defendants they
expanded upon their responses.  The court informed the parties by order signed July 27, 2011, that it was
treating all grounds asserted and arguments made in the supplemental filings as amendments and
supplements to the previously filed motion and responses, and the court gave any party who wished to
make a response to the supplemental filing of any other party an opportunity to do so by August 10,
                                                                        (continued...)

record, and applicable legal authorities, the court has concluded for the reasons given below that such motion should be granted, and that declaratory relief and a requested injunction should be ordered.

I.

### Nature of the Action

This action was brought by plaintiff under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, seeking a declaration that it has no obligation under a liability insurance policy it issued to Church (a) to provide a defense to any of the defendants in a damage suit brought by Gilmore against Church Defendants and Michael A. Meyer ("Meyer") in the District Court of Bexar County, Texas, 131st Judicial District, as Cause No. 2008-CI-03917, styled "Sonya Gilmore v. Michael A. Meyer, Missionary Church of Disciples of Jesus Christ, and Amando Salgado" ("underlying lawsuit"), seeking recovery of damages Gilmore sustained in a motor vehicle collision that occurred on March 9, 2006, in San Antonio, Texas, involving a vehicle operated by Meyer and a vehicle operated by Gilmore ("March 9, 2006, collision") or

---

[1](...continued)
2011.  Gilmore and Church Defendants filed responses.  The court is considering all of the supplemental filings and responses in this memorandum opinion and order.

(b) to indemnify Meyer or Church Defendants as to any claims made against them by Gilmore for damages sustained by Gilmore by reason of such collision.[2]

Gilmore alleged in the underlying lawsuit that the vehicle Meyer was operating was "owned and/or controlled by [Church] and/or [Salgado]," Mot., Am. App. at GIG 0249, that Salgado and Meyer were employees of Church at all times relevant to the allegations made in the underlying lawsuit, and that Church is liable for the acts and/or omissions of Salgado and Meyer, id. Apparently Gilmore is claiming in the underlying lawsuit that Church and Salgado are liable for Meyers's conduct at the time of the collision based on a negligent entrustment theory and that Church is liable for the conduct of Salgado and Meyer based on a respondeat superior theory.

Gilmore was joined as a defendant in this declaratory judgment action so that she will be bound by whatever declarations the court makes.

---

[2]Plaintiff named Meyer along with Gilmore and Church Defendants as a defendant in the instant action. A final judgment by way of default was entered in favor of plaintiff against Meyer on May 27, 2011, declaring that plaintiff had no obligation under the insurance policy in question to provide a defense to Meyer or to indemnify Meyer with respect to the claims being made against him. There having been no appeal from that judgment, it is now final.

3

II.

<u>The Summary Judgment Record</u>

A.   <u>Pertinent Provisions of the Insurance Policy</u>

While there is disagreement as to the legal effect of language of the insurance policy in question, there is no dispute as to its wording and structure.

The policy, which bears Policy No. 1215-179, was issued by plaintiff to Church ("Insurance Policy").  Mot., Am. App. at GIG 0027 (GIG 0137); GIG 0029 (GIG 0139).  The liability insurance coverage provided by the Insurance Policy was under a Comprehensive General Liability Coverage Form ("Form") (the liability insurance coverage provided by the Form, as modified by endorsements, except the endorsement titled "Amendatory Endorsement, Hired and Nonowned Business Auto Coverage-Excess Liability and Medical Payments Insurance," is referred to herein as the "CGLC").  <u>Id.</u> at GIG 0059 (GIG 0169).

The bodily injury and property damage insuring agreement of the CGLC, which is found in the Form and an amendatory endorsement, was worded in pertinent part as follows:

> We will pay those sums that the insured becomes legally
> obligated to pay as damages because of "bodily injury"
> or "property damage" to which this insurance applies.
> We will have the right and duty to defend the insured
> against any "suit" seeking those damages.  However we

4

have no duty to defend the insured against any "suit"
seeking damages for "bodily injury" or "property
damage" to which this insurance does not apply.[3]

Id. at GIG 0044 (GIG 0154), GIG 0059 (GIG 0169).  The word

"insured" as used in the basic CGLC insuring agreement included

Church; Church's employees or managers, but only for acts within

the scope of their employment by Church or while performing

duties related to the conduct of Church's business, and:

(1)   Any of your members, but only with respect to
their liability for your activities or activities
they perform on your behalf, at your direction and
within the scope of their duties.

(2)   Any trustee or official; member of any Board,
Council, Deaconry or Vestry; "Minister"; Sunday
School Superintendent and any Sunday School
teachers; or any student teachers teaching as part
of their educational requirements; but only with
respect to their duties as such.

(3)   Any person(s) who are volunteer worker(s) for you,
but only while acting at your direction and within
the scope of their duties.[4]

Id. at GIG 0068-0069 (GIG 0178-0179).

---

[3]The words "we," "us," and "our" as used in the Insurance Policy refer to plaintiff.  Mot., Am.
App. at GIG 0059 (GIG 0169).

[4]The words "you" and "your" as used in the Insurance Policy refer to Church.  Mot., Am. App. at
GIG 0059 (GIG 0169).

The bodily injury and property damage liability insurance coverage provided by the CGLC applies to any bodily injury or property damage caused by an "occurrence" that takes place in the "covered territory" and during the policy period, id. at GIG 0044 (GIG 0154), GIG 0059 (GIG 0169), subject to exclusions stated in the Form, id. at GIG 0059, et seq. (GIG 0169, et seq.).  The word "occurrence" is defined in the CGLC Form to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  Id. at GIG 0075 (GIG 0185). The only exclusion at issue in this action is an exclusion from CGLC coverage for bodily injury or property damage "arising out of the ownership, maintenance, use, or entrustment to others of any . . . [automobile] . . . owned or operated by or rented or loaned to or hired by any insured" ("Automobile Exclusion").  Id. at GIG 0059 (GIG 0169), GIG 0062 (GIG 0172).

By an endorsement to the Form titled "Amendatory Endorsement, Hired and Nonowned Business Auto Coverage-Excess Liability and Medical Payments Insurance" ("Endorsement"), the liability insurance coverage otherwise provided by the CGLC was

supplemented.  <u>Id.</u> at GIG 0082 (GIG 0192).[5]  The Endorsement's

insuring agreement was worded as follows:

> 1.   Insuring Agreement of Coverage A (Section I) of
>      the Commercial General Liability Coverage Form
>      applies to all sums an "insured" legally must pay
>      as damages because of "bodily injury" or "property
>      damage" to which this insurance applies, caused by
>      an "accident" and resulting from the maintenance
>      or use of a covered "auto."
>
>      However we have no duty to defend "suits" for
>      "bodily injury" or "property damage" not covered
>      by this endorsement.

<u>Id.</u>  The "Insuring Agreement of Coverage A (Section I) of the

Commercial General Liability Coverage Form" to which the

foregoing refers is the insuring agreement language set forth

above as the insuring agreement of the CGLC.

The Endorsement gave the following description of the

automobiles that qualified as a "covered 'auto,'" as that term is

used in the Endorsement's insuring agreement:

> The following describes the "autos" that are covered
> "autos" under this endorsement.

---

[5]In addition to supplementing the basic CGLC coverage by adding a limited form of automobile
liability coverage specifically defined by the Endorsement, the Endorsement contained language saying
that it replaced some of the provisions found in the Form.  <u>See, e.g.</u>, Mot., Am. App. at GIG 0082 (GIG
0192) (Exclusions"); GIG 0084 (GIG 0194) ("Who is An Insured"); GIG 0086 (GIG 0196) ("Business
Auto Conditions"); GIG 0087 (GIG 0197 ("Definitions").  Plaintiff and Church Defendants have a
disagreement as to whether the Automobile Exclusion survived language in an Endorsement that said that
it deleted and replaced certain of the exclusions contained in the CGLC Form.  For reasons given at a
later point in the memorandum opinion and order, the court is not required to resolve that disagreement.

1.  HIRED "AUTOS" means those "autos" you lease, hire, rent or borrow.  This does not include any "auto" you lease, hire, rent, or borrow from any of your employees or partners or members of their households.

2.  NONOWNED "AUTOS" means those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business.  This includes "autos" owned by your employees or partners or members of their households but only while used in your business or your personal affairs.

Id. at GIG 0082 (GIG 0192).

The term "Insured," as it applied to any coverage added by the Endorsement, included Church, for any covered auto; any person who was an officer, clergy, or employee of Church, but only with respect to such person's duties as such; any person who was a volunteer for Church, but only while using an auto with Church's express knowledge and authorization, in the course of Church's business, and within the course of such persons's duties for church; and anyone else while using, with Church's permission, a covered auto hired or borrowed by Church, except the owner of the auto or anyone else from whom the auto was borrowed or hired.  Id. at GIG 0085 (GIG 0195); GIG 0087 (GIG 0197) ("Insured").

B.   <u>Facts Established Through Salgado's Testimony</u>

The truthfulness of the oral deposition testimony Salgado gave in the underlying lawsuit, which is a part of the summary judgment evidence in the instant action, is unchallenged. He gave the following testimony:

At the time of the automobile collision in question in March 2006, Salgado was a member of, and a preacher and, perhaps, a supervisor or superintendent for, Church. His activities on behalf of Church included soliciting and collecting donations for Church. Even if he was not a superintendent for Church at the time of the automobile collision, he essentially was in charge of Church's activities in Texas. He kept part of the donations he collected for Church for use in providing indispensables, such as food and shelter, for him and his family. The part of the donations he kept is what he received in return for services he rendered on behalf of Church. Since 1983 he has been making his living preaching and collecting donations on behalf of Church; and, he is compensated by Church by being provided by Church with a place for him and his family to live and the material things that his family needs, such as clothing. He does routine repairs on property owned by Church in Texas, and uses a part of the

contributions he collects for Church for payment of costs he incurs in making the repairs.

Salgado has the final authority to determine the percentage of the donations he collects that will be forwarded to Church and the percentage he will keep for his necessities. Salgado does not have any kind of set salary or any type of compensation that he receives by the job. He has not been employed outside Church since 1983, nor has his wife. In addition to the money he keeps out of the collections he makes for Church to cover his living expenses, his children help him sometimes financially. He has not had any source of income since 1983 other than what he keeps out of collections for Church and his children have given him. He considers himself a volunteer, rather than an employee.

Shortly before the March 9, 2006, collision, he drove himself and three other Church members, Meyer, Francisco Restrepo ("Restrepo"), and Raul Rodriguez ("Rodriguez"), in a 1999 Dodge van through San Antonio en route to the Texas valley where Rodriguez planned to visit his dad. Meyer and Restrepo were going along for the ride at the request of Rodriguez. Rodriguez purchased the gas used to drive from Dallas to San Antonio by use of funds provided to him by his family. When they reached San Antonio, the four went to a house owned by Church in San Antonio

10

that Salgado thought was occupied by Jose and Christina so Salgado could say hello to them.  When they arrived, they discovered that Jose and Christina had vacated the house, and had left it in bad condition.  Upon realizing that the house had been abandoned, and needed to be cleaned up, the four of them made the decision to do so.  He considered that he and the others were cleaning the house as volunteers, not as employees of Church.

After the decision was made to clean the house, Salgado received a call that required him to go to Houston to counsel some brothers and to make repairs on Church property situated there.  Before Salgado left for Houston, he bought groceries for the use of the three he was leaving behind.  The groceries were purchased with part of the Church collection money he had retained.  He did not leave any money with the other three.  He told the others that he would be gone one day and one night.  The others were to stay in San Antonio and clean the house.  He left for Houston around, or shortly after, noon the day before the automobile collision, and was returning from Houston to San Antonio when he received a call informing him of the collision. When Meyer and Restrepo told him about the accident, they told him they were looking for a place to eat.  They probably got money from what Rodriguez's family had given him.

11

The 1999 van Salgado was driving in March 2006 was owned by him and titled in his name. He paid for it from donations that had been solicited on behalf of Church. He used the van in Church business, including the taking of members of Church to street locations so that they could solicit for donations. He kept the 1999 van in Dallas. Nobody connected with Church ever told him that he could not use his own personal vehicle to do Church business. In fact, he always uses his personal vehicle to achieve Church business because Church does not own a vehicle. The bishop, who is his superior, understands that he uses his own vehicle for Church business.

In March 2006 he had another van, a 1992 van, that he had left in January 2006 at the house in San Antonio that Jose and Christina had occupied. The 1992 van was owned by him and titled in his name. In late January 2006 he had driven the 1992 van from Dallas to San Antonio when he took Christina and Jose there to reside at the house. He abandoned the 1992 van in San Antonio at that time because his insurance on it had expired, and he did not want to drive it any more. He returned to Dallas from San Antonio in January 2006 by public transportation. He did not intend for the occupants of the house in San Antonio to use the 1992 van. He left the key hanging on a hook in a room in the

12

house, which he considered to be an office.  He locked that room,
with a doorknob lock to which he had the only key.  He kept the
door locked because he did not want others to have access to the
key to the van, and he did not want to lose the key.  When he and
the other three arrived at the house in San Antonio in March
2006, the door to the room he considered to be an office, where
he had left the key to the 1992 van, was open and the lock on the
door was broken.  He did not notice before he left on his
overnight trip to Houston whether the key to the van was where he
put it.

Salgado did not say anything to Meyer or Restrepo about the
1992 van before he left them in San Antonio upon his departure
for Houston.  He never told them that they could use the van.  He
had the right to control use of the van.  If he had known that
any of the three he left behind were likely to use the van while
he was on his trip to Houston, he would have looked for the key
and would have taken it with him to Houston if he could find it.
After the automobile collision occurred, he scolded Rodriguez for
them using the van, telling Rodriguez that they should not have
used the vehicle inasmuch as he did not give them authorization
to use it.  He does not know why the police report of the

automobile collision shows under the "Lessee/Owner" section the name Missionary Church of Disciples of Jesus Christ.

C.   Other Items Tendered as Summary Judgment Evidence

Plaintiff and Gilmore tendered a number of other items as summary judgment evidence, but, other than the text of Gilmore's petition, as amended, in the underlying lawsuit, the court does not consider that any of the other items constitute summary judgment evidence probative on any issue presented by any party in support of or in opposition to the motion.  Objections were made to many of the other items, and the court has ruled on those objections by a separate memorandum opinion and order.

III.

The Motion and Responses Thereto

A.   Grounds of the Motion

The basic ground of plaintiff's motion for summary judgment is that there is no coverage under the Insurance Policy for claims made by Gilmore based on the March 9, 2006, collision. Plaintiff maintains that it owes no duty under the Insurance Policy to defend the defendants in the underlying lawsuit or to indemnify them as to any of the claims made against them as a result of the March 9, 2006, collision.

14

Plaintiff also urges as grounds for its motion that (1) the eight-corners rule[6] does not apply because the Insurance Policy does not define the duty to defend more broadly than the duty to indemnify and (2) a declaratory judgment should be rendered at this time resolving all insurance coverage disputes between the parties even though the underlying lawsuit has not been resolved.

B.   Responses to the Motion

   1.   Response of Church Defendants

Church defendants initially responded that:

a.   The eight-corners rule applies, with the result that plaintiff's duty of defense must be based on the allegations of the underlying lawsuit and the terms of the Insurance Policy, and not on extrinsic evidence.

b.   The duty to indemnify must be decided on the basis of facts determined in the underlying lawsuit, not on extrinsic evidence.

c.   There are disputed issues of material fact as to (i) whether the Insurance Policy includes coverage for automobile accidents, (ii) ownership of the 1992 van involved in the collision with Gilmore, (iii) whether Salgado was an "employee"

---

[6]The "eight-corners rule" is described and discussed under subsection B of section VI of this memorandum opinion.

of Church, and (iv) whether the 1992 van was "nonowned" by
Church.

d.   As modified by the Endorsement, the Insurance Policy
covers liabilities of Church involving automobiles and alleged
negligent entrustment.

e.   The Endorsement covers the 1992 van as a "nonowned"
vehicle.

In the supplemental response Church Defendants filed August
9, 2011, they encouraged the court to make declaratory judgment
rulings that would finally resolve all insurance coverage
controversies between the parties (which coincidentally could
resolve issues as to whether Church Defendants have liability to
Gilmore for her damages arising from the March 9, 2006,
collision).   They urged the court enjoin prosecution of the
underlying lawsuit to whatever extent necessary to protect and
effectuate this court's declaratory rulings.

2.   Gilmore's Response

Generally, Gilmore contended that the Endorsement is worded
in such a way as to cause plaintiff to provide insurance coverage
for Gilmore's claims.   She contended that Church, Salgado, and
Meyer were "Insureds" under the Endorsement as to the automobile
collision in question.   Also, Gilmore contended that issues of

16

fact exist as to the ownership of the 1992 van Meyer was operating at the time of the collision, whether Meyer was pursuing Church's business or affairs at that time, and whether Meyer was an "employee" or "volunteer" of Church at that time. In Gilmore's supplemental brief filed August 10, 2011, Gilmore urged the court to wait for the outcome of the state court action before making any rulings that would have the potential to adversely affect Gilmore's claims in the underlying lawsuit.

IV.

## Pertinent Summary Judgment Principles

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim or defense if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The movant bears the initial burden of pointing out to the court that there is no genuine dispute as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986). The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case. Id. at 324. See also Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). If the evidence identified could not lead a rational trier of fact to find in favor of the nonmoving party as to each essential element of the nonmoving party's case, there is no genuine dispute for trial and summary judgment is appropriate. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 597 (1986).

V.

## Pertinent Principles of Texas Insurance Law

In Sharp v. State Farm Fire and Casualty Insurance Co., the Fifth Circuit explained the rules of insurance contract interpretation that must be applied under Texas law, saying:

> Under Texas law, insurance policies are interpreted in accordance with the rules of construction that apply to all contracts generally. It is well-established that ambiguities in insurance contracts are to be strictly construed against the

18

insurer.   However, this rule of strict construction
applies only if the contract is determined to be
ambiguous.

Whether the contract is ambiguous is a question of
law for the court to decide.   The fact that the parties
disagree as to coverage does not create an ambiguity,
nor may extrinsic evidence be admitted for the purpose
of creating an ambiguity.   As in all contract cases,
the court looks first to the language of the contract
itself, and [w]hen there is no ambiguity, it is the
court's duty to give the words used their plain
meaning.

115 F.3d 1258, 1260-61 (5th Cir. 1997) (citations & internal

quotation marks omitted).

In a diversity action such as this, the law of Texas

determines which party has the burden of proof on insurance

coverage issues.   Ideal Mut. Ins. Co. v. Last Days Evangelical

Ass'n, Inc., 783 F.2d 1234, 1240 (5th Cir. 1986).   Texas law

places the burden of proving the existence of coverage under an

insurance policy on the party claiming it.   Guar. Nat'l Ins. Co.

v. Vic Mfg. Co., 143 F.3d 192, 193 (5th Cir. 1998).   On the other

hand, since 1991 in Texas the insurer has had the burden of

proving the applicability of any exclusion in the policy.   Id.;

see also Telepak v. United Servs. Auto. Ass'n, 887 S.W.2d 506,

507 (Tex. App.--San Antonio 1994, writ denied); TEX. INS. CODE

§ 21.58(b).   The burdens of proof in a declaratory judgment

action brought by an insurer seeking a declaration of non-

19

coverage are the same as they would be if the action had been
brought by a party against the insurance company claiming the
existence of coverage for a particular claim or event.  See Pace
Corp. v. Jackson, 284 S.W.2d 340, 350 (Tex. 1955); McCart v.
Cain, 416 S.W.2d 463, 465 (Tex. Civ. App.--Fort Worth 1967, writ
ref'd n.r.e.).

VI.

Analysis

A.   Church Defendants and Gilmore Have Failed to Carry
     Their Burden to Prove Insurance Coverage

     1.   General

     Church Defendants initially contended, and plaintiff denied,
that the Endorsement deleted the Automobile Exclusion from the
CGLC.  Plaintiff initially contended that the Automobile
Exclusion operated to prevent coverage for Gilmore's claims.  The
court does not devote further attention to that dispute because,
as explained below, there are reasons independent of the
Automobile Exclusion as to why the Insurance Policy does not
provide coverage for claims arising from the March 9, 2006,
collision.  Under this subheading, the court first considers
whether the automobile liability coverage added by the
Endorsement extended to claims arising from the collision.  And

20

then the court considers whether there was liability coverage

under the CGLC, independent of the supplemental coverage provided

by the Endorsement, for the claims arising from the collision.

2. <u>Inapplicability of the Coverage Added by the
Endorsement</u>

a. <u>Inapplicability as to Church</u>

Church is an "insured" under the Endorsement "for any

covered 'auto.'"  Mot., Am. App. at GIG 0085 (GIG 0195).

However, defendants have not adduced summary judgment evidence

that the 1992 van qualified as a "covered 'auto'" at the time of

the collision.[7]  There is no evidence that the van was a "Hired

Auto" inasmuch as there is no evidence that it was an automobile

that Church hired, rented, or borrowed, nor is there evidence

that it was a "Nonowned Auto" inasmuch as there is no evidence

that it was being used in connection with Church's business at

---

[7]The Endorsement's insuring agreement extended coverage only to accidents "resulting from the maintenance or use of a covered 'auto,'" subject to other qualifications as well. Mot., Am. App. at GIG 0082 (GIG 0192). The term "covered 'auto'" was defined in the Endorsement insuring agreement as follows:

The following describes the "autos" that are covered "autos" under this endorsement.

1. HIRED "AUTOS" means those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent, or borrow from any of your employees or partners or members of their households.

2. NONOWNED "AUTOS" means those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your employees or partners or members of their households but only while used in your business or your personal affairs.

<u>Id.</u>

the time of the collision.  For those reasons, the Endorsement's insuring agreement was not invoked as to Church.

There is another reason why defendants have not established coverage for Church under the Endorsement.  The Endorsement's insuring agreement incorporates by reference the insuring agreement of the Form, and adds that it applies only to "sums an 'insured' legally must pay as damages . . . ."  Id. at GIG 0082 (GIG 0192).[8]  For the reasons discussed in more detail under the immediately following sub-subheading 3, there is no evidence that would support a conclusion that Church had any legal obligation to pay within the meaning of either of the insuring agreements.

      b.    Inapplicability as to Salgado and Meyer

There are two reasons why the Endorsement's insuring agreement was not invoked as to Salgado or Meyer.  First, there is no evidence that Salgado or Meyer was an "Insured" under the Endorsement as to the 1992 van at the time of the collision as the word "Insured" was used in the Endorsement.  See supra at 8. There is no evidence that the van was being used with Church's

---

[8]The part of the Endorsement's insuring agreement that is pertinent to the text here is worded as follows:

     Insuring Agreement of Coverage A (Section I) of the Commercial General Liability Coverage Form applies to all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the maintenance or use of a covered "auto."

Mot., Am. App. at GIG 0082 (GIG 0192).

express knowledge and authorization, in the course of Church's

business, or within the course of any duty Meyer or Salgado had

for Church.  Second, there would be no coverage under the

Endorsement for the claims against Salgado or Meyer for the added

reason, already discussed, that there is no evidence that the

1992 van qualified as a "covered 'auto'" within the meaning of

the Endorsement's insuring agreement.  A third reason why the

Endorsement's insuring agreement was not invoked as to Salgado is

that, for reasons discussed in sub-subsection 3 below, there is

no summary judgment evidence that Salgado has a legal obligation

to make payment to Gilmore for damages she suffered by reason of

the March 9, 2006, collision.

*    *    *    *

For the foregoing reasons, defendants have failed to carry

their burden to establish liability insurance coverage under the

Endorsement for any of Gilmore's claims arising from the March 9,

2006, collision.

3.   <u>Inapplicability of the Insurance Coverage Provided by the CGLC</u>

a.   <u>General Remarks</u>

Unless Church Defendants and Gilmore have adduced evidence

that insurance coverage exists for Gilmore's claims under the

23

wording of the CGLC's insuring agreement as to Church, Salgado,
or Meyer, plaintiff is entitled to a summary adjudication that it
has no obligation under the Insurance Policy to make any payment
related to Gilmore's claims or to provide any defense with
respect to those claims.  For convenience, the court is repeating
the part of the insuring agreement pertinent here:

> We will pay those sums that the <u>insured becomes legally
> obligated to pay</u> as damages because of "bodily injury"
> or "property damage" to which this insurance applies.

Mot., Am. App. at GIG 0044 (GIG 0154), GIG 0059 (GIG 0169)
(emphasis added).  Thus, the persons contending that insurance
coverage exists as to the March 9, 2006, collision must start by
proving two basic facts.  The first is that one of the persons
against whom Gilmore has made claims (Meyer, Salgado, and Church)
is an "insured" within the meaning of the insuring agreement, and
the other is that a person who is an insured is "legally
obligated to pay" Gilmore for damage resulting from the March 9,
2006, collision.  The court has concluded that defendants have
failed to adduce summary judgment evidence to satisfy their proof
burdens as to either of those facts except to show that Church
was an "insured."

24

b.   Inapplicability as to Church

Church was an "insured" under the CGLC.  Id. at GIG 0068
(GIG 0178).  So, as to Church, the next decisive issue becomes
whether there is summary judgment evidence that Church has a
legal obligation to pay.  The court concludes that there is no
such evidence in the summary judgment record.  There is no
evidence that at the time of the collision Meyer was engaging in
any activity on behalf of Church, or that Church entrusted Meyer
with the vehicle he was operating at the time of the collision.
Not only is there an absence of evidence of anything that would
cause Church to have legal liability for Meyer's operation of the
vehicle, the summary judgment evidence, in the form of Salgado's
testimony, affirmatively establishes absence of facts that would
cause Church to have any legal liability to pay for Gilmore's
damages.

c.   Inapplicability as to Meyer

Because there is no summary judgment evidence that Meyer was
engaged at the time of the collision in an activity at Church's
direction or on behalf of Church in the performance of any duty
he had for Church, there is no evidence that Meyer qualified as

an "insured" within the meaning of the insuring agreement of the CGLC.[9]  See supra at 5.

      d.   Inapplicability as to Salgado

     Turning now to whether Salgado was an "insured" within the meaning of the CGLC's insuring agreement.  All of the definitions of the word "Insured," as used in the CGLC, require, except as to Church, that the person in question must have been engaged, at the time of the occurrence giving rise to a claim, in conduct on behalf of Church in the performance of his duties related to the conduct of Church business.  Id.  The summary judgment evidence is that Salgado was either an officer, manager, clergy, member, employee, or volunteer of Church or enjoyed more than one of those roles.  However, the record does not support a finding that Salgado was an "insured" at the time of the collision because there is no evidence that the van was being used with respect, or in relation, to his duties as an officer, manager, clergy, member, employee, or volunteer of Church or that any conduct of Salgado that led to the use of the van by Meyer was within the scope of Salgado's employment by, or duties for, Church, or was

---

[9]There is summary judgment evidence that might be used to establish that Meyer was a volunteer for Church on the day of the collision, but there is no summary judgment evidence that the collision occurred while he was using the 1992 van with Church's express knowledge and authorization, in the course of Church's business, or within the scope of a duty he had for Church.

related to the conduct of Church's business.   Therefore,
defendants have failed to establish that Salgado was an "insured"
within the meaning of the CGLC's insuring agreement in relation
to the collision.

An alternative reason why defendants have not shown that
Salgado is provided insurance coverage as to Gilmore's claims is
that the parties claiming that there is insurance coverage have
failed to adduce summary judgment evidence raising an issue that
Salgado has become legally obligated to pay for damages sustained
by Gilmore in the March 9, 2006, collision.

*     *     *     *

For the reasons expressed above, Church Defendants and
Gilmore have failed to carry their burden to prove applicability
to Gilmore's claims of the insuring agreement of the CGLC as to
Church, Salgado, or Meyer.

B.   The Eight-Corners Rule Does Not Apply

In GuideOne Elite Insurance Co. v. Fielder Road Baptist
Church, the Texas Supreme Court gave the following explanation of
the "eight-corners" rule:

> The eight-corners rule provides that when an
> insured is sued by a third party, the liability insurer
> is to determine its duty to defend solely from terms of
> the policy and the pleadings of the third-party

claimant.  Resort to evidence outside the four corners
of these two documents is generally prohibited.

197 S.W.3d 305, 307 (Tex. 2006).

The eight-corners rule simply does not apply to the

Insurance Policy.  The defense-obligation wording of the

Insurance Policy is drastically different from the wording found

in the liability insurance policies that gave rise to, and

perpetuated, the eight-corners rule.  The insurance company and

the insured in each of the cases that has applied the rule

contracted that the insurance company would "defend any suit

brought against [the insured] seeking damages, even if the

allegations of the suit are groundless, false or fraudulent."

See, e.g., GuideOne Elite Ins. Co., 197 S.W.3d at 307; Am.

Physicians Ins. Exch. v. Garcia, 876 S.W.2d 842, 846 (Tex. 1994);

Argonaut Sw. Ins. Co. v. Maupin, 500 S.W.2d 633, 634 n.1 (Tex.

1973); Heyden Newport Chem. Corp. v. S. Gen. Ins. Co., 387 S.W.2d

22, 24-25 (Tex. 1965).  See also C.T. Drechsler, Annotation,

Allegations in third person's action against insured as

determining liability insurer's duty to defend, 50 A.L.R.2d 458,

463-64 § 3 (1956).

The eight-corners-rule policy language ("even if the

allegations of the suit are groundless, false or fraudulent")

that is absent from the policy issued by plaintiff is essential

to applicability of the rule.   The significance of the omitted

language recently was discussed by the Texas Supreme Court in

GuideOne Elite Insurance Co., where the Court said:

> The policy here obligated GuideOne to indemnify the
> Church in the event of a meritorious claim for sexual
> misconduct, but with respect to the duty to defend, the
> contract provided that GuideOne should "defend any suit
> brought against [the insured] seeking damages, even if
> the allegations of the suit are groundless, false or
> fraudulent . . . ."
>
> The policy thus defined the duty to defend more broadly
> than the duty to indemnify.   This is often the case in
> this type of liability policy and is, in fact, the
> circumstances assumed to exist under the eight-corners
> rule.

197 S.W.3d 305 at 310 (citations omitted) (emphasis added).

As the Texas Supreme Court explained, the policy language

that is missing from plaintiff's policy is "assumed to exist

under the eight-corners rule."   Id.   And, that policy language is

what causes the insurance company's duty to defend to be broader

than its duty to indemnify under the kind of policy containing

the language.   Because plaintiff's policy does not contain that

language, the eight-corners rule is not applicable to this case.

The language of plaintiff's policy makes the duties to pay and

defend coextensive.

29

Not only does the Insurance Policy not contain the
"groundless, false, or fraudulent" policy language that is so
essential to the eight-corners rule, the language of the policy
could not make any clearer that the parties contracted in such a
way as to preclude applicability of the rule.  The basic
definition of plaintiff's defense obligation, as set forth in the
CGLC and adopted by reference in the Endorsement, reads as
follows:

> We will have the right and duty to defend the insured
> against any "suit" seeking those damages.  However we
> have no duty to defend the insured against any "suit"
> seeking damages for "bodily injury" or "property
> damage" to which this insurance does not apply.

Mot., Am. App. at GIG 0044 (GIG 0154), GIG 0059 (GIG 0169).  To
eliminate any possible uncertainty on the subject as to coverage
provided by the Endorsement, the Endorsement added the following
language:

> However we have no duty to defend "suits" for "bodily
> injury" or "property damage" not covered by this
> endorsement.

Id. at GAG 0082 (GIG 0192).

In Pendergest-Holt v. Certain Underwriters at Lloyd's, the
Fifth Circuit made the following observations that are pertinent

to the instant action:

> . . . Texas prefers freedom of contract and honors the
> well-worn prerogatives of parties to override
> judge-made doctrines--like the eight corners rule--by
> contracting around them.  After all, it is a contract
> that we are construing.  Assuming but not deciding the
> eight corners rule would have applied, the parties
> chose--in plain language--to displace it and to provide
> for the use of extrinsic evidence.  We must give effect
> to those bargained-for choices.

600 F.3d 562, 574 (5th Cir. 2010) (footnotes omitted).

The dictate of Texas law that "insurance policies are
interpreted in accordance with the rules of construction that
apply to all contracts generally," Sharp, 115 F.3d at 1260,
compels the conclusion that plaintiff has no obligation to
provide a defense to any defendant in the underlying lawsuit if
the insurance provided by plaintiff's policy does not apply to
any of the claims made in the lawsuit.  Therefore, extrinsic
evidence is proper for consideration, and should be considered,
in determining whether plaintiff has an obligation to defend
anyone in the underlying lawsuit.

As explained in subsection A of this section VI, the
liability insurance provided by the Insurance Policy does not
apply to the claims Gilmore is making in the underlying lawsuit.
Consequently, plaintiff does not have any duty to defend that
lawsuit because Gilmore is seeking damages in the lawsuit "to

which [the] insurance does not apply." Mot., Am. App. at GIG
0044 (GIG 0154), GIG 0059 (GIG 0169).

C.   <u>A Ruling on the Duty to Indemnify Is Appropriate at
This Time--All Coverage Issues Are to be Decided Now</u>

The court is not persuaded by Gilmore's contention that the
court cannot resolve all the insurance coverage disputes between
the parties until after the state court litigation has been
concluded. There is no reason why the court cannot, or should
not, at this time fully and finally resolve those disputes even
if such a resolution coincidentally resolves issues raised in the
underlying lawsuit.

In this federal declaratory judgment action, federal law
determines procedural aspects of the action, such as the issue of
"justiciability." <u>See</u> <u>Cincinnati Ins. Co. v. Holbrook</u>, 867 F.2d
1330, 1333 (11th Cir. 1989); <u>Ohio Cas. Ins. Co. v. Cooper Mach.
Corp.</u>, 817 F. Supp. 45, 47 (N.D. Tex. 1993); <u>State Farm Mut.
Auto. Ins. Co. v. Bates</u>, 542 F. Supp. 807, 817 (N.D. Ga. 1982).
Federal law is that the question of whether an insurance company
has a duty to indemnify under an insurance policy can be decided
under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, even
though the underlying litigation as to which the indemnification
obligation might arise has not been resolved by trial. <u>See</u>

32

<u>Maryland Cas. Co. v. Pac. Coal & Oil Co.</u>, 312 U.S. 270, 273-74 (1941); <u>see also</u> <u>Cincinnati Ins. Co.</u>, 867 F.2d at 1332-33; <u>Ohio Cas. Ins. Co.</u>, 817 F. Supp. at 47.   In <u>American States Insurance Co. v. Bailey</u>, the Fifth Circuit held that it was not an abuse of discretion for a federal district court to decide the issue of the duty to indemnify as well as the duty to defend even though the underlying state court litigation had not been resolved by trial.   133 F.3d 363, 368-69 (5th Cir. 1998).

Gilmore has known from the outset that the existence of insurance coverage, <u>vel non</u>, for her claims for damages was to be decided by the rulings sought by plaintiff's motion for summary judgment, and she had ample opportunity to present to the court as summary judgment evidence any available evidence that would raise an issue of legal liability on the part of Church Defendants for her damages.   She pointedly was alerted by the order the court signed July 27, 2011, that the issues to be resolved could include the issue of whether Church Defendants became legally obligated to pay damages to her because of the March 9, 2006, collision.

Presumably Gilmore presented all the evidence available to her.   None that she presented raised an issue of fact that could lead to a conclusion that Church or Salgado could be found to be

33

legally obligated to make any payment to her because of damages she sustained by reason of the collision.

The court recognizes that it might have the discretion not to fully resolve the disputes presented by plaintiff's request for declaratory relief. And, the court is aware that it could await the outcome of the underlying lawsuit before resolving the issue of whether Church or Salgado has legal liability to Gilmore. But, the court has concluded that the instant action presents the most appropriate proceeding for resolution of all the issues that must be resolved in order to bring to an end the controversies between the parties relative to insurance coverage for Gilmore's claims.

All the parties are before this court, but not all of them are before the state court in the underlying lawsuit. As between the two courts, this court is the only one that is in a position finally to resolve the issues. Such an outcome is consistent with the wholesome utility and objective of the Declaratory Judgment Act. The potential of conflicting findings between a federal court in a declaratory judgment action and a state court in a damage suit is one of the reasons why the Supreme Court held in <u>Maryland Casualty Co.</u> that the plaintiff in a state court damage suit was properly joined as a party to a federal

34

declaratory judgment action brought to resolve the disputes between the insurance company, its insured, and the state court plaintiff.   312 U.S. at 274.

The issue of whether Church has legal liability to Gilmore is one that must be resolved for the court to fully resolve the insurance coverage dispute between the parties.   While the issue of Salgado's legal liability to Gilmore is not integral to the court's conclusion that the summary judgment evidence does not establish that he was an "insured" under the insurance agreement of the CGLC or the Endorsement, the court appropriately is rendering an alternative ruling of noncoverage as to Salgado on the ground that defendants, having failed to adduce any evidence that he has any legal liability to Gilmore, have not shown that he comes within the insuring agreements.

## VII.

### Summary Judgment is Being Granted
and
### Declarations That Are Being Made

The court has concluded that plaintiff's motion for summary judgment, as modified and supplemented, should be, and is hereby, GRANTED as to all determinative coverage issues, and that declaratory relief fully resolving the insurance coverage disputes should be ordered.

35

The court hereby ORDERS and DECLARES that:

1.    Church is not legally obligated to pay any amount to Gilmore because of any damage she suffered as a result of the March 9, 2006, collision;

2.    neither Salgado nor Meyer engaged in any conduct that caused Church to be legally responsible for Meyer's operation of the vehicle Meyer was operating at the time of the March 9, 2006, collision;

3.    plaintiff provides no liability insurance coverage under the Insurance Policy for any claim Gilmore has, or has asserted, against Church for any damage she suffered as a result of the March 9, 2006, collision;

4.    plaintiff will have no obligation under the Insurance Policy to pay on behalf of Church any award made to Gilmore in the underlying lawsuit, or to indemnify Church as to any such award;

5.    plaintiff does not have, and has not had, any obligation under the Insurance Policy to defend Church with respect to any claim made by Gilmore against Church arising from the March 9, 2006, collision;

6.    plaintiff has not had, and does not have, any obligation under the Insurance Policy to provide a defense to Church in the underlying lawsuit;

7.    the vehicle Meyer was operating at the time of the March 9, 2006, collision was not a "covered 'auto'" within the meaning of the Endorsement;

8.    Salgado was not an "insured" within the meaning of any insuring agreement contained in the Insurance Policy as to the March 9, 2006, collision or any of the events related to it;

9.    Salgado is not legally obligated to pay any amount to Gilmore because of any damage she suffered as a result of the March 9, 2006, collision;

10.   Salgado did not engage in any conduct that caused him to be legally responsible for Meyer's operation of the vehicle Meyer was operating at the time of the March 9, 2006, collision;

11.   plaintiff provides no liability insurance coverage under the Insurance Policy for any claim Gilmore has, or has asserted, against Salgado for any damage she suffered as a result of the March 9, 2006, collision;

12.   plaintiff will have no obligation under the Insurance Policy to pay on behalf of Salgado any award made to Gilmore in

the underlying lawsuit, or to indemnify Salgado as to any such award;

13. plaintiff does not have, and has not had, any obligation under the Insurance Policy to defend Salgado with respect to any claim made by Gilmore against Salgado arising from the March 9, 2006, collision;

14. plaintiff has not had, and does not have, any obligation under the Insurance Policy to provide a defense to Salgado in the underlying lawsuit;

15. Meyer was not an "insured" within the meaning of any insuring agreement of the Insurance Policy as to the March 9, 2006, collision or any of the events related to it;

16. plaintiff provides no liability insurance coverage under the Insurance Policy for any claim Gilmore has, or has asserted, against Meyer for any damage she suffered as a result of the March 9, 2006, collision;

17. plaintiff will have no obligation under the Insurance Policy to pay on behalf of Meyer any award made to Gilmore in the underlying lawsuit, or to indemnify Meyer as to any such award;

18. plaintiff does not have, and has not had, any obligation under the Insurance Policy to defend Meyer with

respect to any claim made by Gilmore against Meyer arising from the March 9, 2006, collision; and

19. plaintiff has not had, and does not have, any obligation under the Insurance Policy to provide a defense to Meyer in the underlying lawsuit.

VIII.

## Injunctive Relief is Appropriate

In the response Church Defendants filed August 9, 2011, they urged the court to grant an injunction, as authorized by the "relitigation" exception to the Anti-Injunction Act, 28 U.S.C. § 2283,[10] to protect and effectuate the declaratory rulings the court is making. They cited Royal Insurance Co. of America v. Quinn-L Capital Corp., 960 F.2d 1286, 1288-89, 1293-97 (5th Cir. 1992), and Royal Insurance Co. of America v. Quinn-L Capital Corp., 3 F.3d 877, 888-89 (5th Cir. 1993), for the proposition that an injunction barring further prosecution of a state court proceeding is proper following declaratory judgment rulings made by a federal district court in an insurance coverage matter when

---

[10]Section 2283 of title 28, United States Code, reads as follows:

A court of the United States may not grant an injunction to say proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

the rulings coincidentally determine issues raised in the state
court proceeding.

"The relitigation exception is intended 'to prevent state
litigation of an issue that previously was presented to and
decided by the federal court.'"  Moore v. State Farm Fire & Cas.
Co., 556 F.3d 264, 273 (5th Cir. 2009) (citing and quoting from
Chick Cam Choo v. Exxon Corp., 486 U.S. 140, 147 (1988)).  The
factors to be considered in determining whether the exception
applies were enumerated by the Fifth Circuit in Moore:

> In determining whether the relitigation exception
> applies, the district court employs a four-part test:
> (1) parties in the later action must be identical to or
> in privity with the parties in the previous action; (2)
> judgment in the prior action must have been rendered by
> a court of competent jurisdiction; (3) the prior action
> must have concluded with a final judgment on the
> merits; and (4) the same claim or cause of action must
> be involved in both suits.

556 F.3d at 273.

The four-part test expressed in Moore is satisfied here as
to the issues of the legal obligation of Church Defendants to
make payment to Gilmore for damages she sustained in the
collision.  The issues of liability of the Church Defendants to
Gilmore for damages she suffered were actually litigated at the
summary judgment stage in the instant action, and are being
actually decided at this stage of the litigation by the rulings

in this memorandum opinion and order, and the final judgment that will accompany it.  Gilmore and the Church Defendants are parties to both actions.  The declaratory relief the court is ordering will be part of a judgment rendered by a court of competent jurisdiction.  This action will be concluded by a final judgment on the merits.  There are identical issues in the two actions as to the legal liability of the Church Defendants to Gilmore for damages she suffered by reason of the March 9, 2006, collision.

Because of the indication in Gilmore's most recent filing in this action that she and her attorneys plan to continue to prosecute the underlying lawsuit against Church Defendants no matter what declaratory rulings the court makes in this action, Gilmore's Supp. Br. filed Aug. 10, 2011, at 5-6, the court has concluded that the most prudent course of action will be to grant an injunction as requested by Church Defendants.  Therefore,

The court hereby ORDERS that Gilmore and her attorneys not pursue, and they are hereby ENJOINED from prosecuting, any claim in any court based on any theory that Church or Salgado has any

legal obligation to pay any amount to her because of any damage

she suffered as a result of the March 9, 2006, collision.

   THE COURT SO ORDERS.

   SIGNED August 16, 2011.

                                    _____
                                    JOHN McBRYDE
                                    United States District Judge